BRIDGET F. McGAFFIGAN *vs.* CITY OF BOSTON.

Suffolk.    March 22, 1889. — May 11, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Personal Injuries — Defective Sidewalk — Cover of Coal-Hole — New Trial.*

At the trial of an action against a city for an injury caused to a traveller by falling into a coal-hole in the sidewalk of a highway, there was evidence that the cover to the hole was loose, and that the stone into which it was fitted was "rounded underneath," so that the cover would tip up or turn over when stepped on, and this was apparent from the street; that, although the cover could be securely fastened by a bolt on the inside, it was usually left unfastened; that this condition of the coal-hole and cover had existed for a considerable time and was known to a police officer of the city, who had reported the fact at his station; and that half an hour before the accident the cover had been removed by one rightfully putting in coal, who upon replacing it neglected to fasten it on the inside. *Held,* that there was evidence of a defect in the sidewalk, of which the city might have had notice by the exercise of reasonable care and diligence, even if the police officer's knowledge was not of itself notice to the city.

TORT for personal injuries occasioned to the plaintiff by an alleged defect in a sidewalk of Thacher Street, a highway in Boston. Trial in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions, in substance as follows.

There was evidence that the plaintiff, on November 22, 1884, while travelling along the sidewalk in question, fell into a coal-hole, the cover of which, not being fastened from the inside as it was constructed and intended to be fastened, tipped when she stepped upon it, and permitted the plaintiff to fall in, causing severe injuries. There was also evidence that when the cover

was fastened on the inside it was safe and secure, and could not be tipped or pushed off, but that at the time of the accident it was not so fastened ; that from half-past five to six o'clock P. M. of the day of the accident the coal-hole cover had been removed for the purpose of taking in coal through the hole by an occupant of the adjoining premises having the lawful use of the same, and that the cover was replaced by the person putting in the coal, who neglected to fasten it on the inside; and that the plaintiff received the injuries half an hour later, at half-past six o'clock.

Mrs. McLaughlin, a witness called by the plaintiff, testified that she saw the cover three days before the accident happened; that at that time she was going down Thacher Street with a Mrs. Feeley, who stepped her foot on the middle of the cover of the coal-hole, and it tipped right over; and that one Alley was in front of them, whose attention the witness called to the cover.

Alley testified that at the time of the accident he was a police officer of the defendant city ; that previous to its occurrence he had several times examined the coal-hole and the cover; that a day or two before the accident his attention was especially called to it by Mrs. McLaughlin; that he had found the cover loose previously, and reported it at the station ; that at the time Mrs. McLaughlin drew his attention to it he examined it, and, as he stepped on either edge of it, it would turn over; that it fitted nicely in the sidewalk, but was rounded underneath so that it would balance and tip up; and that he took a note of it and reported it again. On cross examination, Alley testified that " whatever part you stepped on, it tipped up, it was loose ; it fitted snugly round the top, but the under part was worn away"; that "it was a thin cover; the recess was deep enough in the stone to fit it in smoothly "; and in reply to the question, " Was not the only trouble with the cover that the occupants neglected to put a broomstick or bolt through to fasten it ? " the witness said, " That is the way I understood it."

The plaintiff testified, on cross examination, that she saw the cover the Wednesday before the accident, and walked over it. The question was then asked, " You saw that it was all right then?" and she answered, " Yes, sir."

There was no evidence that any officer of the city had, between the time of this using of the coal-hole and the time of the plaintiff's injury, notice of such want of fastening, unless the above evidence shows such notice.

The defendant asked the judge to rule on this evidence that the plaintiff could not recover; but the judge refused so to rule, and ruled that the case should go to the jury, and gave them, among others, the following instructions:

" This woman claims that she has received an injury by a defect which the city of Boston by reasonable care and diligence could remedy, so that she would have received no injury from it; and that the city of Boston either knew that there was a defect, or, fulfilling its duty reasonably, it might have known that defect. . . . This case has this peculiarity: the neglect of the city which is imputed in this case may, perhaps, be as well described by the word ' non-interference ' as by any other word. A portion of the highways, the sidewalk, in a great city, is more or less undermined for the convenience of abutters where land is scarce and valuable, in order to obtain access to the basements or the cellars of houses along the street. Coal-holes are tolerated, if not licensed, everywhere. . . .

" If the defect was solely the want of fastening, then the question arises whether the city knew that it was unfastened, through its officers. That might be known, if it was visible to an officer patrolling that sidewalk, that it was loose for the want of fastening. It might receive notice by an officer who had seen that a passer by, a person passing over it, had displaced it so as to indicate that the proper fastening was not applied to it. It has been held that it is not the reasonable duty of the city to examine every coal-hole within its limits, every day or every hour, to see whether it is fastened as it ought to be on the inner side; but if on the outside there are appearances of looseness and insecurity which are obvious to the officers of the city as they patrol that sidewalk, that those appearances would be notice which might require some application of care. If the officers actually saw that the cover was in a loose condition for the want of fastening, that would be notice of the condition of things then. The practical inquiry is, whether at the time of the happening of this event the city had knowledge of a con-

dition of things there which made that sidewalk unsafe and inconvenient for public travel, or whether, in the exercise of what might be reasonably required of the city as its duty, and what it was practicable for the city to do, it could have ascertained that condition of things.

" The only defect for which the jury can find the city liable consists in the coal-hole cover not having been fastened on the inside at the time of the injury; and if the jury find that the city had no notice of this fact, or could not have had notice of the defect, or could not have prevented the injury by reasonable care on its part, then the defendant will be entitled to a verdict.

" The plaintiff says, Here was the defect, the city saw it, knew its effect upon the passers by, and so it cannot be said that it was a defect for which the city was not responsible. It is claimed on the part of the city, however, that the condition of this coal-hole is one of those things which it cannot be reasonably required of the city to know, simply because it is impossible. But the question of means of knowledge and the care and diligence necessary to obtain knowledge is, of course, immaterial, if the jury should find that the defective condition of this coal-hole was visible and apparent, or was specifically called to the attention of an officer of the city, and he saw the effect of it."

The jury returned a verdict for the plaintiff in the sum of $4,000; and the defendant alleged exceptions.

After verdict, the defendant filed a motion for a new trial and to set aside the verdict, for the reasons, — " 1. That the verdict was not in accordance with the evidence in the case and the instructions given by the court. 2. That the jury in their verdict did not conform their decision to the instructions given them by the court in applying the law to the evidence given in this case." The judge overruled the motion; and the defendant alleged exceptions.

*A. J. Bailey*, for the defendant.

*J. D. Long*, for the plaintiff.

FIELD, J. The city is required to keep its streets reasonably safe and convenient for travellers, (Pub. Sts. c. 52, § 1,) and is liable in damages for any injury received through a defect in a

street which might have been remedied by reasonable care and diligence on its part, if it had reasonable notice of the defect, or might have had notice of it " by the exercise of proper care and diligence." Pub. Sts. c. 52, § 18. The city of Boston by its ordinances authorizes the board of aldermen to permit the construction of coal-holes under the streets, and to prescribe the manner in which they shall be constructed and covered. Revised Ordinances of 1885, c. 28, §§ 16, 17. It does not appear that the covers of coal-holes cannot be so constructed that they will not slip off or turn up, in any ordinary use of the streets, even if they are not fastened down on the inside. It may be impracticable for the city, if it permits coal-holes in the streets at all, to guard against the possibility of the coal-holes being left open, but it is not shown to be impracticable for the city to require a covering of such a kind that when the cover is shut the street is reasonably safe although the cover is not fastened on the inside.

In *Hanscom* v. *Boston*, 141 Mass. 242, " there was no evidence that the coal-hole and cover were improperly constructed, or that there was anything in the appearance of the coal-hole or cover that indicated any defect, or that it had ever before been out of place, and no evidence that the officers of the city had any knowledge that the cover was not fastened down on the inside." And the court held that there was no evidence that the city had reasonable notice of any defect, or might have had notice of it, or might have remedied it, by the exercise of reasonable care and diligence.

In the case at bar there was evidence that the cover was loose, and that the stone into which it was fitted was " rounded underneath," so that the cover would " balance and tip up," or turn over when stepped on; that this was apparent from the street, and that, although the cover would be secure if fastened by a broomstick or bolt on the inside, it was usually left unfastened; and that this condition of the coal-hole and cover had existed for a considerable time, and was known to a police officer of the city who had " reported it at the station." We think that this was evidence of a defect of which the city might have had notice by the exercise of proper care and diligence, even if the knowledge of the police officer was not in itself

notice to the city, upon which we express no opinion. See *Donaldson* v. *Boston*, 16 Gray, 508 ; *Post* v. *Boston*, 141 Mass. 189 ; *Blake* v. *Lowell*, 143 Mass. 296.

The fact that, half an hour before the plaintiff was injured, " the coal-hole cover had been removed for the purpose of taking in coal through the hole by an occupant of the premises having the lawful use of the same, and that the cover was replaced by the person putting in the coal, who neglected to fasten it on the inside," is not conclusive against the right of the plaintiff to maintain her action. The evidence was that the defect in the condition of the coal-hole and cover was permanent, and the neglect of the occupant of the premises to fasten the cover on the inside was habitual, and it does not appear that the person putting in the coal did not leave the coal-hole as securely covered as he found it. We see no error in the rulings and instructions of the court, and we cannot say, as matter of law, that a new trial should have been granted.

*Exceptions overruled.*