# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1905.

---

### DRAKE v. KANSAS CITY, Appellant.

Division One, October 11, 1905.

1. **SIDEWALK: Latent Defects: Coal Hole: Discovery.** A loose iron lid over a coal hole in a sidewalk, too light, rising above the surface of the walk and liable to turn and become displaced by persons stepping upon it, is not a latent defect. An inspection made from the surface would have discovered such defect, and if it had so existed from the time of its construction, the city was negligent, and is liable for injuries to pedestrians stepping thereon in the exercise of ordinary care. (Distinguishing Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317; and Buckley v. Kansas City, 156 Mo. 16.)

2. ———: **Coal Hole: Duty of City.** The presence and nature of coal holes in sidewalks, constructed for the accommodation of abutting property-owners, necessarily call for greater care and closer inspection by the city than ordinary sidewalks demand where no such conditions exist.

3. ———: **Construction: Notice.** If the construction of a coal hole in a sidewalk is such that it is improper and unsafe, and the cover is liable to be displaced by pedestrians stepping on it, the city is not entitled to notice of its defective condition, for it has constructive notice from the beginning.

4. ———: **Latent Defect: Discovery.** It is no part of the duty of persons passing along a sidewalk to discover latent defects therein.

(370)

Drake v. Kansas City.

5. ———: ———: Instruction. Where the cover of the coal hole in the sidewalk was loose and protruded above the surface, and its defective construction could easily have been discovered and ascertained from an inspection made from the surface, there is no room in the case for an instruction on the subject of latent defect.

6. ———: ———: ———: Notice. It is the duty of the city from the beginning of the construction of a coal hole in a sidewalk to see that it is a reasonably safe construction, and its liability, where the defect is in the construction, does not depend on actual notice. And an instruction which tells the jury that if they find "that such defective construction could not have been discovered by a person exercising ordinary care and prudence in walking over the sidewalk," should not be given.

7. ———: Acts of Third Persons: Defense: Erroneous Modification of Erroneous Instruction. The plaintiff based his case on the defective construction of a coal hole in the sidewalk, in that the lid was loose, did not fit and was liable to be displaced by one stepping on it. Defendant introduced as a witness the abutting property-owner who testified that she had raised and propped up the iron lid over the coal hole on the morning of the accident and had done so every morning for six weeks or two months preceding the accident, and asked an instruction to the effect that it was not liable for defects caused by third persons, and this the court modified so as to tell the jury that plaintiff could not recover if the defect was obvious and plaintiff failed to observe it. *Held,* that the instruction as asked was erroneous, and under the circumstances the court would have been justified in refusing it without modification. *Held,* also, that the modification was erroneous, and under the circumstances should not have been given, but it was not reversible error.

8. VERDICT: Passion and Prejudice: Conflict in Evidence. Although plaintiff alone may have testified that the lid to a coal hole in the sidewalk was lying flat in its place when he stepped upon it, it is the right of the jury to believe him and to disbelieve numerous other witnesses who testified that it had been propped up and that he was looking across the street, and such conflict in the testimony is not sufficient to support the charge that the verdict was the result of passion and prejudice on the part of the jury.

Appeal from Carroll Circuit Court.—*Hon. Jno. P. But-ler,* Judge.

AFFIRMED.

*L. A. Laughlin* and *R. J. Ingraham* for appellant.

(1) The court erred in refusing to sustain the demurrer to the evidence at the close of plaintiff's case. Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317; Buckley v. Kansas City, 156 Mo. 16; Matthews v. New York, 78 App. Div. 422; Hanscom v. Boston, 141 Mass. 242; Rushton v. Allegheny, 192 Pa. St. 574; Cooper v. Milwaukee, 97 Wis. 458. (2) The court erred in modifying and giving defendant's instruction 5. (3) The court erred in modifying and giving defendant's instruction 8. Christian v. Ins. Co., 143 Mo. 460; Bank v. Armstrong, 62 Mo. 59; Mason v. Railroad, 75 Mo. App. 1; Chitty v. Railroad, 148 Mo. 64. (4) The verdict of the jury was the result of passion and prejudice. Spohn v. Railroad, 87 Mo. 74; Garrett v. Greenwell, 92 Mo. 120; Whitsett v. Ransom, 79 Mo. 258.

*Frank P. Walsh, Virgil Conkling* and *E. R. Morrison* for respondent.

(1) By the exercise of reasonable care the appellant could have known of the defects complained of in time to have remedied the same prior to the injury complained of. Barr v. Kansas City, 121 Mo. 22; McGaffigan v. Boston, 149 Mass. 289; Benjamin v. Railroad, 133 Mo. 289; Buckley v. Kansas City, 156 Mo. 16, 75 Mo. App. 188; Joliet v. Walker, 7 Ill. App. 271; Tiedeman on Mun. Corp., sec. 350A; City of La Salle v. Porterfield, 138 Ill. 119; Norton v. St. Louis, 97 Mo. 541; Jones, Neg. of Mun. Cor., secs. 94, 95; City of Atchison v. Jansen, 21 Kan. 575; Roe v. Kansas City, 100 Mo. 190; Vanderslice v. Philadelphia, 103 Pa. St. 107; Jegglin v. Roeder, 79 Mo. App. 435; Hembling v. Grand Rapids, 99 Mich. 294; Kuntsch v. New Haven, 83 Mo. App. 180; Snyder v. City of Albion, 113 Mich. 275. (2) The city had ample time and opportunity to have discovered the defective condition of the sidewalk at this point. Maus v. Springfield, 101 Mo. 617; Young v. Webb City, 150

Mo. 340; McKissick v. St. Louis, 154 Mo. 588; Reedy v. Brewing Assn., 161 Mo. 541; Carrington v. St. Louis, 89 Mo. 208; Beauvais v. St. Louis, 169 Mo. 505; Barr v. Kansas City, 105 Mo. 550; Post v. Boston, 141 Mass. 189; Milledge v. Kansas City, 100 Mo. App. 490; 2 Shearman & Redfield on Negligence, sec. 369; Sweeney v. City of Butte, 15 Mont. 274; Chapman v. City of Macon, 55 Ga. 566; Smith v. Leavenworth, 15 Kan. 81. (3) The coal hole and cover form a part of the sidewalk and the city is charged with notice if they are defective in construction. Barr v. Kansas City, 105 Mo. 557; Brake v. Kansas City, 100 Mo. App. 614; Swenson v. City of Lexington, 69 Mo. 167; Wendall v. Mayor, etc., of Troy, 39 Barb. 337; Weber v. City of Creston, 75 Iowa 16. (4) Appellant's instruction 5 was properly modified by the trial court. Buckley v. Kansas City, 95 Mo. App. 201; Squires v. Chillicothe, 89 Mo. 232; Mitchell v. City of Plattsburg, 33 Mo. App. 560. (5) The trial court did not err in modifying appellant's eighth instruction.

MARSHALL, J.—This is an action for $25,000 damages for personal injuries received by the plaintiff on the 24th of May, 1900, in consequence of stepping into a coal hole in the sidewalk on the south side of Thirteenth street, between Tracy and Forrest Avenues, in Kansas City, and in front of house No. 1211 East Thirteenth street. There was a verdict and judgment for the plaintiff for $15,000, and after proper steps the defendant appealed.

### THE ISSUES.

The petition alleges that Thirteenth street is a public highway of the defendant city and that at the time of the accident the sidewalk, as maintained by the defendant, was in an unsafe and dangerous condition, in this, "that a certain coal hole therein, being a circular aperture from one to two feet in diameter, was improperly, unskillfully and negligently constructed, maintained, suffered and permitted to be and remain in the side-

walk; that the cover of said coal hole was too light for the purposes for which it was used; that the rim around the under side of said cover was too shallow and not of sufficient depth for the purpose for which it was used; that the said rim was too small in diameter, causing the said cover to be in a loose condition when put in its place; that a certain iron frame upon which said cover rested was at or near the level of the balance of the sidewalk, so that when the covering was placed in position, said iron cover protruded above and over the balance of the sidewalk; so that said cover and frame were defective, unsafe, dangerous and insecure and said cover did not sit firmly over said hole, and was thus liable to turn and become displaced by persons stepping upon or against the same, thus opening said hole, and entrapping and affording an unsafe and insecure footing to persons passing over the same;" that the defendant knew, or by the exercise of ordinary care could have known, of the unsafe, dangerous and defective condition of the sidewalk, which condition existed for a length of time reasonably sufficient for the defendant to have ascertained and corrected the same; that while plaintiff was walking upon said sidewalk and exercising ordinary care, and was ignorant of the defective and unsafe condition thereof, he stepped on the cover of said coal hole, which, in consequence of the defects stated, turned in said frame and plaintiff's leg dropped into said hole, and plaintiff fell violently upon the edge of said cover and upon the sides of said coal hole, and was injured in a manner, and to a permanent extent, which, it is only necessary to say, was of the most painful and serious character that could be inflicted upon a man.

The answer admits the character of the defendant city, denies every other allegation of the petition, and pleads contributory negligence of the plaintiff. The case was taken on change of venue from Kansas City to Carroll county, Missouri.

The case made is this:

It was admitted that the place where the coal hole was located was in a sidewalk of a public street of the defendant city. The coal hole apparatus was produced in court and by stipulation of counsel it was admitted to be in the same condition that it was in at the time of the injury except that the rim had been surrounded by cement by the defendant. The plaintiff was a man fifty-five years of age at the time of the accident and was engaged in the advertising business, earning from twelve to fifteen hundred dollars a year. He lived at 1306 Michigan avenue, which was east of the place of the accident. On the day of the accident, at about 9:15 o'clock A. M., he was proceeding west on Thirteenth street on his way down town to his business, and while so doing he fell into the coal hole and received the injuries complained of.

The plaintiff says that the coal hole was in the middle of the stone sidewalk, and that the top thereof was lying flat, and that he stepped upon it and that it gave way or slipped, so that his foot went into the coal hole and he fell astride of the cover. He says he saw the coal hole before he stepped on it, and that the cover was lying perfectly flat in its place.

Mrs. Max Cohn, whose testimony was taken by the defendant, but read by the plaintiff, testified that she boarded at 1215 East Thirteenth street, the house next door to the premises in front of which the coal hole in question was located; that she occupied the third-story front room, and was sitting at the front window, and first saw the plaintiff standing in front of her boarding house, and the next she saw he was in the coal hole; that Thirteenth street, at that point, is thickly built up; that she had seen the cover over the coal hole slightly raised before the day of the accident, and sometimes it was not in its regular position.

Luther B. Keebaugh, a witness whose deposition was taken by the defendant but read by the plaintiff, testified that he lived at 1215 East Thirteenth street,

that he passed the coal hole six or eight times a day for several years before the accident and had frequently seen the cover of the coal hole out of place, with some obstruction placed over the top of the coal hole; that he had often heard the cover over the coal hole rattle when persons stepped onto it; that the cover over the coal hole stood a little above the level of the walk; that that portion of the city was thickly built up and the street was a much-traveled street.

Albert Stedman, a witness for the plaintiff, testified that he was hauling brick for the building of some flats on the other side of the street; that just before the accident he noticed that the cover to the coal hole was a little off of the hole and one side tipped down about an inch and a quarter or two inches; that it was in such condition about five minutes before the accident; that he did not see the accident but saw the plaintiff in the coal hole immediately after he had fallen into it, and assisted him to get out of it; that the cover of the coal hole tipped towards the west and did not rest on the rim of the coal hole.

J. O. Hogg, a witness for the plaintiff, testified that he was an architect and had experience in providing for coal holes and covers thereon; that he examined the coal hole in question after the accident; that there is an iron frame about a quarter of an inch thick that is put in a coal hole cut into the stone sidewalk; that the cover was between fifteen and sixteen inches in diameter and was about nine-sixteenths of an inch thick; that there was a rim below the underpart of the cover; that the same extended about one-fourth of an inch above the sidewalk, that the cover did not fit tight in the frame; that the rim was too shallow, so that the cover projected above the sidewalk; that when a person stepped upon the cover it would fly up out of the frame; that the cover should have been heavier, and the rim should have been deeper to prevent the cover from slipping.

Hugh Matthews, a witness for the plaintiff, testi-

fied that he was engaged in the business of manufacturing coal holes, covers and rims, and was a practical machinist and moulder; that the coal hole, cover and rim in question were not properly constructed, the rim being too shallow, and that it should have had lugs on the end or side of it to keep it from slipping; that when the cover is too light, it tips easily when a person steps on it.

The witness, in the presence of the jury, gave a practical demonstration by stepping on the cover of the coal hole, which had been produced in court, and the cover would tip or slip when stepped on. That he had never seen a coal hole like the one in question before, and that it was unlike the other coal holes used in Kansas City.

M. Gleason, a witness for the defendant, testified that he was a member of the police force, and at the time of the accident his beat covered the place of the accident, and that he was at that time on duty; that he did not see the accident but he met the plaintiff as he was being carried away; that he examined the coal hole and found the cover in position and stepped upon it and found that it was solid; that he had never seen the cover out of place before; that he passed the coal hole six or seven times a day and frequently stepped on it, and that it did not tilt or slip.

Jacob Miller, a witness for the defendant, testified that he lived at 1301 East Thirteenth street, and had lived there for about four years prior to the accident, and had passed by the coal hole many times; that in passing he frequently saw the coal hole open, but that there was always a chair or some kind of a guard to warn people; that he had frequently walked over the coal hole cover and that it never slipped or gave way.

Nora Miller, a witness for the defendant, testified that at the time of the accident she was living at 1211 East Thirteenth street; that the house was a four-story house and had fourteen rooms, and that she kept board-

ers there; that she knew the coal hole in question; that on the morning of the day of the accident, she propped up the cover of the coal hole, from beneath, with a board, so that the cover tilted or was raised at the western side thereof, the cover resting on the rim on the north and south sides; that the east side of the cover did not rest on the rim; that she so propped it up about six o'clock in the morning to let fresh air into the coal cellar; that she was not at home at the time of the accident, having left the house about half past seven, and did not return until about nine o'clock, and when she returned she learned of the accident, and found the cover in its proper position resting on the rim; that for six weeks or two months before the accident she had been in the habit of so propping up the cover over the coal hole so as to ventilate the cellar.

Mrs. Miller Samuels, a witness for the defendant, testified that at the time of the accident she boarded at 1215 East Thirteenth street; that she was standing at the front window and saw the accident; that when she first saw the plaintiff he was walking slowly towards the west looking, she supposed, at the building in the process of construction across the street; that the cover of the coal hole at that time was lifted, and was raised about six to ten inches above the rim; that she could not see what held it up; that when plaintiff reached the coal hole, he stumbled or fell, she could not tell which; that she could not see where the cover went as he fell, but after his fall she saw it lying on the opposite side of the hole; that she had never observed the cover to the coal hole before that time.

Mrs. Lelah Keebaugh, a witness for the defendant, testified that at the time of the accident she lived at 1215 East Thirteenth street; that she did not see the accident; that on the morning of the accident she had observed the cover to the hole; that it was raised up; that it was propped up with a stick, which left an opening of quite a space in the top of the coal hole; that she had

seen the cover out of place prior to the day of the accident; had seen it raised or tilted up, and had also seen it lying on the side of the coal hole; that when one stepped heavily on the top of the coal hole, it would move slightly to one side, and if the person did not step off of it, his leg would go down in it; that the coal hole in front of her house was like the one in question here, and that when a person stepped on one end of it, the other end would fly up.

M. S. Howell, a witness for the defendant, testified that the rim of the coal hole was about flush with the sidewalk.

At the close of the plaintiff's case, the defendant demurred to the evidence, the court overruled the demurrer, and the defendant excepted.

### I.

The first error assigned by the defendant is the action of the trial court in overruling the demurrer to the evidence at the close of the plaintiff's case.

Defendant admits that the general rule of law is that it is the duty of a city to keep the sidewalks in a reasonably safe condition for public use, and that it is liable for injuries from defects therein, of which it had actual notice or which had existed for such a length of time, prior to the accident, as, "by the exercise of ordinary care, it could have ascertained, and which it had a reasonable time to remedy." But defendant contends that the defect complained of in this case was a latent defect, which by an inspection of the sidewalk from the surface thereof, such as a person of ordinary care would have made, under similar circumstances, would not have been discovered, and therefore this case falls within the principles announced by this court in Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317; and Buckley v. Kansas City, 156 Mo. 16.

This case is easily distinguishable from the three cases relied on by the defendant. In the Carvin case there was no defect in the construction of the water

meter which caused the accident. The cause of the accident in that case was the accumulation of a small amount of dirt around the flange of the rim of the water meter, on which the cover rested, which raised the cover thereof out of its proper position, and caused it to slip when the plaintiff stepped on it. There was no structural defect in the water meter and it did not appear that the dirt had been allowed to remain on the flange for so long a time as to impute notice to the city.

In the Baustian case, the sleepers under the sidewalk were rotten, the rain had washed the earth away from below the sidewalk, and when the plaintiff stepped on the plank sidewalk, it gave way and he fell. The condition of the sleepers and the gully, so washed beneath the sidewalk, were latent defects, which an inspection from the surface of the sidewalk would not have disclosed.

In Buckley v. Kansas City, supra, the defect was a crack in the flange, which supported the glass covering over the area-way, and so far as then appeared to this court, the cracks were latent defects, which could not have been discovered from an examination from the surface of the sidewalk.

In the case at bar, however, the defect could have been discovered from an examination or inspection of the coal hole and its cover made from the surface of the street. The plaintiff tried the case upon the theory of the petition, that the cover to the coal hole was too light; that the rim around the bottom of the cover was too shallow and too small in diameter, causing the cover to be loose when in its place, and that the iron frame-work upon which the cover rested was at or near the level of the sidewalk, so that the cover, when placed in position, protruded above and over the walk and did not fit firmly over the hole, but was liable to turn and become displaced by persons stepping upon or against the same, thereby opening the hole and causing the person to fall into it.

The contention of the plaintiff is that the defect complained of was a structural defect and could have been discovered by an examination or inspection made from the surface of the sidewalk, and that it had existed from the beginning.

Thus it easily appears that this case does not fall within the principles laid down in the three cases relied on by the defendant.

There was ample evidence offered by the plaintiff to support the allegations of the petition and the theory upon which the plaintiff tried the case in the court below.

The question, therefore, only remains whether or not the city is liable for such defects in its sidewalks.

Roe v. Kansas City, 100 Mo. 190, was an action for damages caused by the plaintiff falling in a trap door on the sidewalk. It appeared that the hinges of the door had been broken and that it was in such condition that by stepping upon some parts of it, it would tip up, and that the accident to the plaintiff occurred in that way. The defect in the door had existed for some months before the accident. The plaintiff recovered in the trial court and the judgment was affirmed by this court.

Barr v. Kansas City, 105 Mo. 550, was an action for damages caused by the plaintiff falling into a sewer, the cover or grating over which had been improperly constructed and of such a character as to make it too short and too narrow to properly cover the opening. The trial court instructed the jury that it was the duty of the city to provide a reasonably safe and sufficient covering for the hole and that it was liable if it failed so to do. This court said: "If the city officers had actual knowledge of the displacement of the cover and failed to securely cover it within a reasonable time before the accident, they were guilty of negligence. If the hole was open and patent for such a length of time before the accident as that the city officials by the ex-

ercise of ordinary care and diligence could have discovered it, and they did not, they were guilty of negligence. . . . The hole could have been securely covered within the hour of the discovery of its condition; besides the displacement was not the result of an accident or the wrongful act of another, but the natural consequence of defects in its original construction by the city, of which it was charged with notice from the beginning, and which it was under a continuing duty to repair.''

This case was again before the court, 121 Mo. 22, and it was said: ''The case was submitted to the jury on two grounds of negligence of the defendant: First, a failure to provide a reasonably safe covering for the man-hole; second, negligence in leaving the hole uncovered. It is now insisted on behalf of the defendant that there was no evidence of negligence in failing to provide a suitable covering, and hence the issue was improperly submitted to the jury.'' The opinion then describes the character of the man-hole and the grating or cover over the same, and then concludes as follows: ''This evidence gives a perfect and complete description of the casting and the cover, and it was not necessary to call witnesses to testify in terms that the cover was too small and therefore dangerous. Had such evidence been introduced it would doubtless have been objected that it was not a proper case for expert evidence. The casting and its cover being described, it was for the jury to say whether the cover was reasonably safe. This casting and cover were placed on the surface of a street where it was subject to jars from vehicles, and the conclusion that the cover was too small or not properly supported is a reasonable one—one which the jury could draw from the evidence. There was therefore no error in submitting this issue to the jury.''

Benjamin v. Railroad, 133 Mo. 274, was an action for damages for injuries received from falling into a coal hole, in front of the defendant's premises, located

on a sidewalk. The plaintiff stepped on the cover over the coal hole which turned and slipped out of place, by reason of which her foot went into the hole and she was injured. The negligence charged was the improper construction of the coal hole and cover, and in all essential respects the defect complained of was as serious as that here involved. There, as here, a third person had been permitted by the city to construct and maintain the coal hole for private benefit and use. This court said: ''The principle is well settled that a city, which authorizes excavations in its streets, is not entitled to notice of the dangerous condition in which they have been left, in order to hold it liable for injury to third persons occasioned thereby.''

The theory of the plaintiff's petition and case is, that the casting constituting the top and cover of the coal hole was necessarily a dangerous construction, in this, that the cover was too light; that the rim around the under side of the cover was too shallow and too small in diameter, which caused the cover to fit loosely into the iron frame-work; that the iron frame-work was at or near the level of the sidewalk, so that the top of the cover, when placed in position on the top of the iron frame-work, protruded over the edges thereof, and prevented it from fitting firmly over the hole and rendered it liable to turn and become misplaced by persons stepping upon it. The evidence shows that the construction was an unusual one and such as is not in common use in Kansas City. From the description contained in the petition and disclosed by the evidence, it is apparent that it was unlike coal holes and their covers such as are described in other cases, where there is a flange projecting from the inside of the iron frame-work on which the cover rested, and where the cover fits entirely inside of the iron frame-work and is so constructed as to be on the level with the sidewalk. Thus it appears that in this case the construction was that there was a rim underneath the cover, and that instead of the

cover fitting into the iron frame-work it rested on the top thereof, and the edges of the cover extended over the iron frame-work. From which it is apparent that if the cover was not of sufficient weight, or if the rim underneath it was not deep enough, as the evidence shows was the case here, the result would be that when a person stepped on one edge of the rim it would necessarily cause the opposite side of the cover to rise up, the rim on the bottom of the cover to become disengaged from the iron frame-work and the lid to slip so as to allow persons to be precipitated into the hole. The defects complained of were shown by the testimony of the experts to be such as would likely produce results such as happened in this case, and in addition thereto, the practical demonstration made by the witness, Matthews, clearly showed that the construction was liable to result just as happened in this case.

It thus appears that this case is wholly unlike the three cases relied on by the defendant, and that there was sufficient evidence to take the case to the jury upon the allegations and proofs made by the plaintiff.

The necessities and convenience of abutting owners may be such as to warrant a city in authorizing such owners to construct and maintain coal holes in the sidewalks, but their presence and nature necessarily call for greater care and closer inspection by the city and its officers than ordinary sidewalks demand where no such conditions exist. Where such permission is granted by the city, the duty immediately arises, both as to the city and the persons constructing the same, to use ordinary care to see that they are so constructed as to be reasonably safe for public use. If the construction is such that it is improper or unsafe and the cover is liable to be displaced, the city is not entitled to actual notice, for it has constructive notice from the beginning. [Barr v. Kansas City, 105 Mo. 557; McGaffigan v. Boston, 149 Mass. 289; Tiedeman on Municipal Corporations, sec. 298; Roe v. Kansas City, 100 Mo. 190.]

There was therefore no error in overruling the defendant's demurrer to the evidence.

## II.

The second error assigned is, the action of the trial court in modifying and giving defendant's instruction number five. That instruction as asked was as follows: "The court instructs the jury that there is no evidence in this case of actual knowledge upon the part of any official of the defendant city of the alleged defective construction of the coal hole, rim and cover. [And though you may find and believe from the evidence that said coal hole, cover and rim were defectively constructed, yet, if you further find that such defective construction could not have been discovered by a person exercising ordinary care and prudence walking over said sidewalk, then your verdict should be for the defendant city.]" The court modified this instruction by striking out the portion in brackets. It is contended that by so striking out such portion, the court authorized a verdict for the plaintiff, or refused to direct a verdict for the defendant, even though the defect was a latent one.

The contention is untenable. The first instruction given for the plaintiff covered the whole theory upon which the plaintiff's case was predicated, and declared that the defendant was liable if the original construction was necessarily a dangerous one, and if the coal hole in such condition had existed for a sufficient length of time for the defendant to have discovered and corrected the same. The theory of the defendant's instruction number five, as asked, was that if the defect was such that it could not have been discovered by a person exercising ordinary care and prudence while walking over the sidewalk, the defendant was not liable, even though the original construction may have been a dangerous one.

The instruction, as asked, did not correctly state the law. Persons passing along a sidewalk may or may

not discover latent defects in the sidewalk, but it is no part of their duty to look for them. It is the duty of a city and its officers to look for defects. For this reason, the court properly struck out that portion of the instruction. But aside from this, there is really no question of latent defect in the construction. The construction, such as it was, could have been easily detected and ascertained from an inspection of the coal hole and its cover made from the surface of the sidewalk. It did not even require the removal of the cover to the coal hole for an inspector to see that it was both an unusual and a dangerous construction. The fact that the top of the coal hole extended over the rim of the iron framework instead of fitting firmly into the iron frame-work, was of itself sufficient to attract the attention of an inspector exercising ordinary care, and to cause him to examine it more closely and to condemn it.

Moreover, the liability of the city in this case did not depend upon an actual notice, for it was the duty of the city from the beginning to see that the coal hole it permitted to be placed in one of its sidewalks was a reasonably safe construction.

There was, therefore, no error in modifying the instruction, but on the contrary, the instruction as given was more favorable to the defendant that it was entitled to under the plaintiff's theory of the case. The defendant's theory of the case was that the coal hole, as originally constructed, was a safe construction, but that it was rendered unsafe by the act of Mrs. Miller, who occupied the house abutting that portion of the street, in raising the coal hole and propping it up early in the morning of the day of the accident, for the purpose of admitting air to the cellar, and that such condition had not existed long enough before the accident to impute notice to the city. This idea was expressed in defendant's instruction number eight, which was modified and given by the court, and which instruction will be presently considered.

### III.

The third error assigned is, the ruling of the court in modifying and giving defendant's instruction number eight.

That instruction as asked was as follows: "The court instructs the jury that though you may believe from the evidence that said coal hole, rim and cover were defectively constructed so that the cover would slip out of place when stepped upon, yet, if you find that said coal hole had been raised up or displaced by someone before plaintiff fell, and that because said cover was raised up or displaced, it slipped when plaintiff stepped upon it, and caused plaintiff to fall into the hole, then your verdict should be for the defendant city."

The court modified this by adding, "provided, you further believe and find from the evidence that such displacement was obvious; that is, that it was of such character that an ordinarily prudent person in passing over such walk could have observed and avoided the same."

The instruction, as asked, was manifestly predicated upon the theory that Mrs. Miller had raised and propped up the cover over the coal hole on the morning of the accident, and that the city had not had time to be charged with notice thereof, and was not liable for the wrong of the witness in so doing. The criticism of the ruling of the court in this regard is, that it permitted the plaintiff to recover, though the cover was so propped up, provided the position was obvious to a passer-by, and thereby broadened the issue and authorized a recovery upon an issue not raised by the pleadings, and that the liability of a city for defects in a sidewalk, caused by the acts of a third person, does not depend upon whether the defect was obvious to the person injured or not; and counsel illustrate their position by saying that the instruction as modified would authorize a recovery where the defect was latent, but would not

authorize a recovery where the defect was patent or obvious, and that the city is not liable for latent defects, but is only liable for defects which could be observed by the exercise of ordinary care.

The plaintiff did not seek to recover because of defects that were caused by the acts of a third person, and which had not existed long enough to impute notice to the defendant. In other words, the plaintiff did not ask to recover upon grounds or theories not raised by the petition. The instruction was based upon a theory of the case which was raised by the defendant and not by the plaintiff.

This case, therefore, does not come within the rule laid down by this court in Chitty v. Railroad, 148 Mo. 64, and cases of like character. The instruction, as asked by the defendant, declared the law to be that the defendant was not liable for defects caused by the act of a third person. The instruction was too broad, for a city is liable for defects in a street caused by third persons, if it permits them to remain after it has constructive notice thereof. And the case made by the defendant in this regard was not simply an isolated instance of a defect in a sidewalk caused by the act of a third person, but that defect, according to the witnesses who testified to its existence, had continued every day for six weeks to two months before the date of the accident. [Carrington v. St. Louis, 89 Mo. 208; Fehlhauer v. St. Louis, 178 Mo. 635.]

The city therefore, was chargeable with notice of such continuing act of the third person in raising and propping up the cover over the coal hole, and by the exercise of ordinary care could have remedied it. The theory of the modification by the court was, that the plaintiff was not entitled to recover if the defect caused by the third person consisted of an obvious defect. If the defect was obvious and the plaintiff failed to observe it and was injured, he could not recover from anyone, for his act would have been the proximate cause of the

injury. The act creating the defect, in such instance, would have been a remote cause.

The general rule of law is, that when a third person causes a dangerous condition to exist in a highway, the city is not liable for injuries resulting therefrom, unless the condition existed for such a length of time as to impute notice to the city, or unless the city had actual knowledge thereof. If the facts in this case had showed such to be the case, the court should have instructed the jury in the language of the instruction asked. But the same witness who afforded the basis of the instruction, by testifying that she had raised the cover on the morning of the accident, also testified that she had done the same thing every day for six weeks to two months before the date of the accident. Under such a state of facts the court would have been fully justified in refusing instruction number eight entirely, and this being true, the modification of that instruction made by the court did not injuriously affect the defendant at all.

## IV.

The defendant next contends that the verdict was the result of passion and prejudice.

The gist of this contention is, that the evidence is so overwhelmingly in favor of the defendant that the court must necessarily find that the jury were guilty of passion or prejudice. The argument is, that the plaintiff is the only witness who testified that the cover was lying flat in its place over the coal hole at the time he stepped on it, and that his testimony is contradicted by that of Mrs. Miller, who says she propped it up on the morning of the accident; by that of Mrs. Keebaugh, who says she saw it so propped up; by that of Mrs. Cohn and Mrs. Samuels, who said that the plaintiff was looking across the street at some houses in process of construction when he stepped on the cover; and by that of Albert Stedman, a witness for the plaintiff, who testi-

fied that he saw the cover about five minutes before the accident and that it was slightly out of position.

If it be conceded that the testimony was just as stated, nevertheless, it would not be sufficient to establish the charge that the verdict was the result of passion and prejudice. For it was the province of the jury to believe or disbelieve any of the witnesses who testified in the case, and it was the privilege of the jury to believe the testimony of the plaintiff if the jury were satisfied that his version of the case was the correct one.

Aside from all this, however, there is no necessary and irreconcilable conflict between the testimony of the plaintiff and the other witnesses. It may be true that Mrs. Miller had propped up the cover over the coal hole, and that Mrs. Keebaugh had seen it so propped up on the morning of the accident, but neither of them testified that it was so propped up at the time of the accident, and Mrs. Miller testified that she was not at home when the accident occurred. Likewise, it may be true, as stated by Mrs. Cohn and Mrs. Samuels, that the plaintiff was looking across the street at the moment he stepped on the cover, yet, this would not establish that the cover was lying flat or was propped up or was slightly out of position. It may be true, as stated by Mr. Stedman, that five minutes before the accident the cover was slightly out of position, and yet it may likewise be true that the cover was lying flat and, so far as the plaintiff could see from the position he was in before he stepped on it, that it was apparently in place.

This analysis, however, is not intended as a comment upon the weight of the evidence, but simply to show that there is nothing in the testimony to induce a fair conclusion or belief that the verdict of the jury was the result of passion or prejudice.

A careful examination of the testimony, and of the instructions given and refused, compels the conviction that the case was fairly presented to the jury; that there is substantial evidence to support the verdict; that, in

view of the serious and painful and permanent character of the injuries inflicted upon the plaintiff, the damages assessed cannot fairly be said to be excessive, and therefore there is no legal ground upon which this court can interfere with the finding of the jury and the judgment of the circuit court. The judgment is affirmed.

All concur.