# Wytheville.

## MARBURY AND OTHERS V. JONES AND OTHERS.

### June 8, 1911.

1. BOUNDARIES—*City Lot Abutting on Street—Abandonment of Part of Street.*—Generally the grantee of a city lot bounded by a street, subject to the right of way, owns to the center of the street, and, consequently, where the location of the street in front of such owner's lot is changed, for a distance not exceeding one half the width of the street, the abandoned portion necessarily enures to his benefit.

2. ADVERSE POSSESSION—*Re-entry of Owner.*—Although title by adverse possession be complete, it will be destroyed by the re-entry of the party having the paper title into actual possession, and holding the same by virtue of the paper title for the statutory period.

3. TRUSTS AND TRUSTEES—*Mortgages—Acts and Statements of Mortgagor Derogatory of Title.*—The grantor in a deed of trust cannot, by any subsequent act of his, affect the rights or title of the trustee, or a purchaser from him. He is a mere tenant at will or sufferance of the trustee or purchaser from him, by whom he may be ejected without notice, and cannot by word or act affect their title, nor can he convey any greater rights to any other person.

4. TRUSTS AND TRUSTEES—*Mortgages—Verbal Acknowledgment by Mortgagor Before Conveyance—Notice to Purchaser.*—A purchaser of land from a trustee in a deed of trust to secure debts will not be affected by a verbal acknowledgment made by the grantor prior to making the deed adversely affecting his title to the land granted, nor by a written contract agreeing to hold the land as tenant of another, of which the purchaser had no notice, where the possession of the grantor was consistent with his apparent title, and his previous possession thereunder. In such case the purchaser's possession is presumed to be under the grantor's previous title, and not under the contract of lease. In order to charge such purchaser with notice of the lease, the possession of the grantor in the deed of trust must have been inconsistent with his apparent or record title.

5. INSTRUCTIONS—*Supplying Omissions.*—An omission in one instruc-
tion may be supplied by a proper statement in another instruc-
tion when it appears that the jury could not have been misled
by the omission.

6. EJECTMENT—*Title of Plaintiff.*—A plaintiff in ejectment must
recover, if at all, on the strength of his own title, and not on
the weakness of that of the defendant.

Error to a judgment of the Circuit Court of the city of
Alexandria in an action of ejectment. Judgment for the
defendants. Plaintiffs assign error.

*Affirmed.*

The opinion states the case.

*Francis L. Smith* and *Lewis H. Machen,* for the plaintiffs
in error.

*J. K. M. Norton,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

This writ of error is to a judgment for the defendant in
error, Bessie W. Jones, who was the defendant in an action
of ejectment brought by the plaintiffs in error, Anna T. Mar-
bury and Eliza H. Marbury, to recover an estate for their
joint lives, and for the life of the survivor, in a strip of land
fronting four feet and eleven inches on the north side of
Prince street, in the city of Alexandria, and extending back
between parallel lines perpendicular to the front line ninety-
four feet.

The square embracing the land in controversy and the
respective holdings of the plaintiffs and defendant is
bounded on three sides, as follows: By Prince street on the
south, by Royal street on the east, and by Pitt street on the
west, and comprised (in the original plan of the city) two
lots, each containing one-half of an acre. Lot No. 61 com-
posed the eastern and lot No. 111 the western half of the
square. The former lot "binds" 176 feet 7 inches on Royal

street, on the east, with a frontage of 123 feet 5 inches on
Prince street, on the south. Lot No. 111 is bounded by lot
No. 61 on the east, and has an equal frontage, 123 feet 5
inches, on Prince street, the original location of the east
line of Pitt street forming its western boundary, and was
so recognized and described in conveyances of subdivisions
of lot No. 111 made prior to the year 1800. Before that
date a brick dwelling, known as the John Dundas house,
stood on the northwest corner of lot No. 111, the western
gable of which overlapped the eastern line of Pitt street,
as then located, 8 feet 3 inches. Presumably for the pur-
pose of leaving the John Dundas house undisturbed, the
council of Alexandria, on February 5, 1800, passed an ordi-
nance establishing a new location for Pitt street, the east
side of which was on a line with the west gable of the Dun-
das house.

While this change in the location of Pitt street obviously
did not affect the paper titles of property holders in that
square, it practically resulted in adding 8 feet 3 inches to
the lots adjoining Pitt street on the west. For it is unques-
tionably the general rule, that the grantee of a city lot
bounded by a street, subject to the right of way, owns to
the center of the street (*Schwalm* v. *Beardsley*, 106 Va. 407,
56 S. E. 135; *Durbin* v. *Roanoke Building Co.*, 107 Va. 753,
60 S. E. 80) ; and, consequently, where the location of the
street in front of such owner's lot is changed, for a distance
not exceeding one-half the width of the street, the aban-
doned portion necessarily enures to his benefit.

The defendant, Bessie W. Jones, derived her title *medi-
ately* through Joseph Wilson, who, in the year 1786, con-
veyed to Josiah Watson the southwestern portion of lot 111
(Lot "E") on map No. 3 (which is filed as a part of this
opinion), as follows: "A part of the lot described in the plan
of the said town by number (111), the same being bounded
as follows, viz., beginning at the corner of the said lot (111)
binding upon Prince street and Pitt street, and running

thence by Pitt street 94 feet; thence easterly, with a line parallel to Prince street, 49 feet; thence, southerly, with a line parallel to Pitt street, 94 feet to Prince street; thence, with Prince street, to the beginning."

It will be observed that this deed antedated the change of location of Pitt street; and the description of lot "E" then given has been substantially followed from that time, through intermediate conveyances, down to and including the deed of July 2, 1882, from Caroline M. Mason to T. Marshall Jones, trustee of his wife, Bessie W. Jones, the defendant.

The plaintiffs' paper title embraces lots "F," "G," "H," "I" and a part of "A," as shown on map 3. This property was formerly owned by the Bank of Potomac, and passed by successive conveyances to the Farmers Bank of Virginia (the Alexandria branch), and the First National Bank of Alexandria, Virginia. The buildings on this property were erected and used for many years for banking purposes, and the predecessors in title of the plaintiffs, seventy years or more before the institution of this suit, inclosed their property with massive brick walls, which are still intact. These walls which separate lots "F" and "I" from lot "E" are designated on map 3 by cross-marks.

It plainly appears from the evidence of the plaintiffs that beginning at the southwest corner of lot 111, a line 49 feet east on Prince street will extend to the Marbury wall on the east, and that a line extended 94 feet north from the same point will reach the Marbury wall on the north. It is clear, therefore, that lot "E," which is within the paper title of the defendant, includes the land in controversy. It is equally true that, unless the plaintiffs' line is to be extended westwardly upon the theory that their holdings have been been enlarged by reason of the relocation of Pitt street (a pretension plainly without merit), their paper title does not embrace the land in dispute.

But the plaintiffs also insist that they have acquired the

**MAP No. 3**

Royal St. or east line of Lot (61)

176.7

N

61)

Alley

6 ft

88 ft. — McMunn — "D" — 24 ft 6 in.

McIver — "C" — 24 ft. 6 in.

Cary — "B" — 34 ft. 5 in.

Horner — Part Lot "A" — 37 ft 11 in.

6 ft

2 1

Dotted line center of square, or dividing line between Lot 61 and Lot 111.

Craig to Bank of Potomac to Appellants — Lot "H" 26.4 and part of Lot "A" 2,1 — 26.7

Craig to Bank of Potomac to Appellants — "G" — 24.6

Slimmer to Bank of Potomac to Appellants — "F" — 24.5

Watson to Appellees — "E" — 49

Craig to Bank of Potomac to Appellants — "I"

111)

123.6

94

25

Line of Pitt St, prior to 1800 or west line of Lot (111)

Line of Pitt St, after 1800

8.3

Prince St, 246 ft. 10 in.

land by adverse possession under color of title. Upon that theory of the case they introduced evidence that the strip of land was an alleyway entered from Prince street through an archway, supported by brick pilasters, connected with the Marbury wall on the east and the wall of an old building on the west; that it was closed by a gate, secured by a lock, the key to which was in the possession of the bank people and subsequently of the plaintiffs; that the strip of ground was paved with bricks, and for many years had been used by the bank officers, and other occupants of the bank property, as a means of access to a toilet on their premises.

Let it be conceded that by this user the plaintiffs' predecessors in title acquired the strip of land by adverse possession; nevertheless, the testimony of the defendant (from the standpoint of a demurrer to the evidence) shows that the possession of those under whom the plaintiffs claim wholly ceased shortly after the close of the Civil War; that the archway on Prince street was planked up at that time; and that the defendant and her predecessors in title took actual possession of the strip by virtue of their paper title, and have held the possession hitherto.

The individual possession of the defendant is contemporaneous with the conveyance from Caroline M. Mason of lot "E" to her trustee July 2, 1882. On September 8, 1882, she and her husband and trustee conveyed to B. F. Peake 20 feet, more or less, off the east side of lot "E," beginning at the middle of the east wall of a brick dwelling then in course of erection by the defendant on the western part of lot "E," running thence to the Marbury line, and put him in possession up to the Marbury wall, including the whole of the strip in controversy. Thereupon Peake erected a brick dwelling upon his lot extending slightly over the western line of the strip in dispute. He laid his pavement in front on Prince street on a line with the Marbury wall, and had a gate opening into his yard between the brick wall and his house occupying the entire space, and cultivated the

ground up to the wall in flowers.   Peake had occupied the
house and premises for about eight years without objection,
when a brother of the plaintiffs asserted title to the strip
of ground and threatened to dispossess him and erect a fence
along the west line of the strip unless he would acknowledge
the Marbury title, and hauled a load of lumber there for
that purpose.   Accordingly, Peake made verbal acknow-
ledgment of the Marbury claim.   A few months afterwards,
on March 25, 1889, Peake and wife, by the same description
contained in the Jones deed to him, conveyed his lot to
Hulfish, trustee, to secure debts.   On November 19, 1891,
Peake entered into a written agreement, acknowledging the
Marbury ownership of the land and stipulating to pay an
annual rental of one dollar for the use thereof until the
lessor should elect to annul the agreement.   Peake having
made default in the payment of the debts secured in the
trust deed to Hulfish, the property was sold and bought
by the defendant, Bessie W. Jones, who was placed in pos-
session and received her conveyance on July 1, 1902.

The first assignment of error is to the exclusion by the
circuit court of the lease from Marbury to Peake.   The con-
tention of the plaintiffs in that regard is that the written
agreement and antecedent parol acknowledgment by Peake
of the Marbury title created the relation of landlord and
tenant between them, which prevented Peake, and also the
defendant who obtained possession under him, from deny-
ing the Marbury title.

We think it clear that the agreement made by Peake with
Marbury, after he had given the deed of trust, could not
in any way affect the rights of the trustee, or, his purchaser,
the defendant.

The principle is stated in Jones on Mortgages (6th ed.),
section 676, as follows: "Of course the mortgagee is not
affected by any act of the mortgagor in passing any right
of his in the premises to third persons, whether by deed,
or by confession of judgment, or otherwise.   He cannot

bind the mortgagee by any contract or deed prejudicial to his title. He cannot create an easement in the land to the prejudice of the rights of the mortgagee. The mortgagor's assignee has no greater rights than the mortgagor himself."

Section 679: " . . . neither can the mortgagor or his grantee, by any subsequent arrangement themselves, affect the mortgagee's lien or prevent its operation to the full extent of the mortgage." See also section 1202.

In *Creigh's Heirs* v. *Henson*, 10 Gratt. 231, Judge Moncure, in delivering the opinion of the court, observes: "The possession of a grantor in a deed of trust, after the execution of the deed, is not adverse to the title of the trustee, but only as his tenant at will or sufferance. The trustee may eject him without notice, or, without ejecting him, may convey the trust subject to a purchaser, whose tenant at will or sufferance the grantor will then become, and by whom he may in like manner be ejected without notice. A person who purchases the trust subject, or any part of it, from the grantor, with notice of the deed of trust, or after its due registration, stands in the place of the grantor, and bears the same relation that he does to the trustee and purchaser from him. These propositions, as general rules of law, will not be denied."

The foregoing principles are familiar to the profession, and fully sustain the ruling of the circuit court in excluding the agreement in question.

The court admitted evidence of Peake's verbal acknowledgment of the Marbury claim, made prior to the execution of the deed of trust to Hulfish; but the acknowledgment was without the knowledge of the defendant, who had previously conveyed the disputed land to Peake and put him in possession thereof. In these circumstances this parol agreement cannot operate to interrupt the otherwise continuous adverse possession of the defendant.

The principle is thus stated in 23 Am. & Eng. Ency. of

Law, 506: "The possession must be inconsistent with the apparent or record title of the grantor, else it will not be sufficient to impose upon the purchaser the duty of making further inquiry; the reason being that in such a case the possession is presumed to be under the grantor's title."

In other words, Peake's possession, after the parol agreement with Marbury, was consistent with his apparent title and previous possession under the defendant, and the defendant at the sale of the lot by Hulfish, trustee, became a purchaser thereof for value, and without notice of the parol agreement. The principle stated in the text is sustained by *Townsend* v. *Little*, 109 U. S. 504, 27 L. Ed. 1012, 3 Sup. Ct. 357, and other authorities cited in the notes.

The next assignment of error relates to giving, refusing and amending instructions. One of the defendant's instructions, which undertook to define adverse possession, was objected to, because it omitted to state that possession to be adverse must be under color of title. That defect, however, was cured by another instruction, which distinctly informed the jury that such possession must be under color or claim of title; so that the jury could not have been misled by the omission.

It is not necessary to notice in detail objections to other instructions, or the last assignment of error, that the verdict was contrary to the law and evidence, as, under the evidence, no verdict in favor of the plaintiffs could have been properly rendered. The burden rested upon them to recover by the strength of their own title, and not upon the weakness of the defendant's title. Their evidence not only fails to measure up to that fundamental requirement in an action of ejectment, but even upon a comparison of titles the defendant showed the better right to the land in controversy.

The result of our consideration is that the judgment is plainly right and must be affirmed.

*Affirmed.*