# CHARLESTON

## HILL v. NORTON *et al.*

Submitted February 25, 1914. Decided May 26, 1914.

1. APPEAL AND ERROR—*Ground for Reversal—Ruling on Demurrer.*

   An erroneous ruling upon a demurrer to each of two counts in a declaration, one of which is insufficient, is not alone ground for reversal, if plaintiff's evidence was admissible under the good count and was sufficient to sustain the cause of action therein averred. (p. 430).

2. MUNICIPAL CORPORATIONS—*Streets—Permission to Maintain Coal Vault—Presumption.*

   Permission by the municipality to construct and maintain a coal vault under and an opening thereto in a city pavement will be presumed from acquiescence and use continued for several years. (p. 431).

3. SAME—*Streets—Maintenance of Coal Hole—Duty of Lot Owners.*

   A lot owner who maintains a coal hole in a city pavement as an appurtenance, whether constructed by him or not, must exercise reasonable care in keeping it in a reasonably safe condition for use

by the public as part of the sidewalk. Whatever the public safety reasonably requires is the measure of diligence to be exercised by him.   (p. 432).

4.  SAME—*Streets—Defective    Sidewalks—Injuries    to    Pedestrian—Liability of Lot Owners.*

If he knows, or by the exercise of reasonable diligence would have known, the grating over a coal hole in the sidewalk in front of his property was defective, and failed to repair it, he is liable for an injury resulting therefrom to a pedestrian lawfully using the sidewalk.   (p. 432).

5.  SAME.

He remains liable for injuries to a pedestrian resulting from a defective coal hole grating in a pavement, when appurtenant to the premises, whether occupied in whole or in part by tenants, if the defect therein existed at the date of the demise.   (p. 433).

6.  SAME—*Streets—Title to Coal Vault and Opening—Easements of Public.*

A grant of a lot abutting on a city street vests title to a coal vault under and an opening in a pavement, though in terms not expressly including either of them. Such title is, however, subject to the easement of the public for street purposes.   (p. 433).

7.  SAME—*Streets—Injuries to Pedestrian—Contributory Negligence.*

A pedestrian is not guilty of contributory negligence solely because he steps on a coal hole grating in a public sidewalk.   (p. 433).

3.  LANDLORD AND TENANT—*Defective Premises—Personal Injuries—Liability of Landlord.*

At the expiration of a tenancy, whether with or without actual change of possession, a landlord may lawfully enter and make necessary repairs; and his neglect so to do renders him liable for injuries resulting from defects then existing in the premises demised.   (p. 435).

9.  APPEAL AND ERROR—*Presentation for Review—Rulings on Evidence.*

Unless brought to its attention by special bills of exception, or upon a motion for a new trial, specifically stating as grounds therefor the admission or rejection of evidence, this court will not consider the rulings of the trial court thereon.   (p. 437).

10. MUNICIPAL CORPORATIONS—*Streets—Injury to Pedestrian—Instructions.*

The trial court properly ruled on the instructions requested by the parties hereto.   (p. 437).

11. EVIDENCE—*Weight and Sufficiency—Preponderance.*

To sustain a finding in his favor, it is not essential there should be a *distinct* preponderance of evidence on behalf of the plaintiff.

To have this effect, it is only necessary that the evidence, when considered in its entirety, reasonably justifies such verdict. (p. 438).

12. APPEAL AND ERROR—*Verdict—Evidence.*

This court will not grant a new trial where the evidence is voluminous and conflicting, unless palpably insufficient to sustain the verdict, or the amount clearly evinces partially, prejudice or passion on the part of the jury or that they were misled by some mistaken view of the merits of the case. (p. 438).

Error to Circuit Court, Ohio County.

Action by Blanch Hill against S. P. and G. W. Norton, for personal injuries. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*John P. Arbenz,* for defendants in error.

*James W. Ewing* and *Hubbard & Hubbard,* for plaintiff in error.

LYNCH, JUDGE:

The injuries for which plaintiff sued resulted from a fall into a coal hole in the pavement adjacent to the lot and building thereon owned by defendants, who are now plaintiffs in error. The cover slipped or tilted when plaintiff stepped on it, one of her legs suddenly dropping into the opening, her body falling heavily across the upper edge of the circular iron grating.

In support of their demurrer to each of the two counts, defendants argue the declaration is insufficient; because the averments of the first are in part stated in the disjunctive, and both charge defendants "as insurers" of the safety of pedestrians on the pavement in front of their property. From the discussion of other questions arising on this review, and the conclusion reached thereon, will fully appear our reasons for holding the second objection untenable. As to the first, even if deemed sufficient to invalidate the first count, because uncertain and therefore violative of the strict rules of pleading; yet, if the second count is sufficient, as we find it to be, and the evidence sustains the cause of action therein averred, such defect does not of itself warrant a reversal. *Bank v. Evans,* 9 W. Va. 373; *Stolle v. Insurance Co.,*

10 W. Va. 546; *Haigh* v. *Association,* 19 W. Va. 793; *Hood*
v. *Bloch,* 29 W. Va. 224; *Cedar Works* v. *Dalea,* 109 Va. 333;
*Johnson* v. *Com.,* 102 Va. 927. That it was thus admissible
and sufficient appears from the facts detailed and the con-
clusion reached on this review. As applicable here, the rule
announced in the cases cited is that, notwithstanding the
error, if indeed it be such, committed by the trial court in
its ruling on the demurrer, still if the evidence certified was
admissible under the second count, and sufficient to warrant
the verdict complained of, this court will not, for that reason
alone, reverse the judgment below.

When and by whom the coal vault and opening were first
made, or whether made with or without municipal license,
the record affords no means of ascertaining. But the record
warrants the conclusion that they were constructed con-
jointly with the basement and superstructure, a brick building
at least two and perhaps more stories in height, and
have since been maintained as appurtenances to the build-
ing. It also warrants the further conclusion that the build-
ing is an old one. The legal, but rebuttable, presumption
is that the coal vault and opening were first constructed
by and with the consent of the municipality. *Hart* v. *Mc-
Kenna,* 94 N. Y. S. 216; *Korte* v. *Trust Co.,* 54 Minn. 530;
1 McAdam on Landl. & Ten. 1632. "Permission to construct
the vault may be inferred from acquiescence in its main-
tenance for many years". 3 Dillon on Mun. Corp. § 1180.

The evidence justifies the conclusion that at no time was
the grating over the coal hole securely fastened by rod or
chain, as required by municipal ordinance passed in 1881,
or that, if thus or otherwise fastened, the appliances pro-
vided had long since ceased to be effective for that purpose.
That plaintiff stepped on the cover and was injured, no one
denies. Nor is there any proof that she did not exercise
reasonable care for her own safety. Defendants at the time
of their purchase knew of the existence of the opening in
the pavement and of the grating covering it, although George
Norton says: "I knew in a general way there was a vault
there; but we never used it, and it never occurred to me any-
thing about it". But plaintiff's husband, who saw the grat-
ing after the accident, testifies: "I could lift it up. There

was no bolt and no rod, nothing holding it. It was just loose, and I lifted it out myself and put it back in. I tried it with a stick, like the rung of a chair. I had something like that with me, like the hook on the stock of an umbrella, and turned it over. I naturally lifted it up and turned it around''. But the extent of plaintiff's injury, and whether temporary or permanent, are questions as to which the testimony is voluminous and conflicting.

Defendants deny liability, first, on the theory that title to the coal area, and the means of access thereto from the sidewalk, did not vest in them by virtue of their deed. That they did pass thereunder, as appurtenances to the building, subject to the easement for street purposes, whether in terms expressly granted or not, is abundantly sustained by the authorities. *Clifton* v. *Weston,* 54 W. Va. 250; *Stewart* v. *Railroad Co.,* 38 W. Va. 438; *Foley* v. *County Court,* 54 W. Va. 16; *Marbury* v. *Jones,* 112 Va. 389; 3 Dillon on Mun. Corp. § 1180, 1183; *Parish* v. *Baird,* 160 N. Y. 302.

Defendants also deny liability in any event, and contend that, if any liability exists under the circumstances of this case, it devolved upon Helmbright, who as tenant occupied part of the premises at the time they acquired title thereto and thereafter without change of possession continued as their tenant at the date of the injury. These two grounds of defense may be considered conjointly.

It is true, when defendants purchased the property in January, 1907, Helmbright occupied the first floor and the basement. His tenancy, however, expired about one month thereafter, when he became their tenant of the same parts but not of the building in its entirety. He thus remained in possession at the date of the injury. In this connection, it may be observed, and the testimony shows, that the coal hole and opening had not been in use, at least for the purpose originally intended, for twenty years or more prior to the accident; and Helmbright did not use either of them at any time during his tenancy, which began in 1906. From that time at least, to the date of the accident in 1909, it is fair to conclude from the testimony, the grating was not securely fastened in the frame, although it does not appear any person except the plaintiff sustained injury thereby.

The authorities seem fully in accord upon the proposition that if at the date of the lease, or a renewal thereof; whether by the same or subsequent owners, the premises are out of repair or in a defective condition, whereby injury occurs to a third person, the owner is liable, either alone or jointly with the tenant. As stated by 1 McAdam on Landl. & Ten. 1636: "Even though the landlord parts with possession of the entire premises, he remains liable where at the time of the lease the sidewalk is unsafe because of the defective or negligent condition of something placed by the abutting owner in, on or by the sidewalk as a convenience or easement to his premises". While they do not concur in holding the landlord liable under all the varying conditions involved, the "coal hole cases" in the main agree such liability exists where the vault and opening are defective at the date of the lease. *Dalay* v. *Savage*, 145 Mass. 38; *Frischberg* v. *Hurter*, 173 Mass. 22; *Anderson* v. *Dickie*, 1 Robt. 238; *Irvin* v. *Wood*, 51 N. Y. 224; *Whalen* v. *Gloucester*, 4 Hun. 24; *Finnigan* v. *Biehl*, 61 N. Y. S. 1116; *Matthews* v. *City*, 80 N. Y. S. 360; *Owings* v. *Jones*, 9 Md. 108; 1 Taylor on Landl. & Ten., § 175. In some instances, both landlord and tenant have been held jointly and severally liable. *Mancuso* v. *Kansas City*, 74 Mo. App. 138; *McLaughlin* v. *Kelley*, 230 Pa. 251; *Irvin* v. *Wood, supra; Calder* v. *Smalley*, 66 Ia. 219; 1 Shear. & Red. Neg. §§ 708-10.

In *Gelof* v. *Morgenroth*, 130 N. Y. App. Div. 17, and *Trustees* v. *Foster*, 156 N. Y. 354, the tenant occupied the ground floor only—other parts of the building, as in this case, being in possession of the landlord or other tenants. The tenant who occupied the first story covenanted to make repairs. The court, in the first case, said mere occupancy of the storeroom and cellar did not relieve the owner from the "duty of preventing the sidewalk from becoming dangerous to those using the street". And, in the second case, it was held that upon the landlord devolved an implied duty to use reasonable care in inspecting and repairing a grate in the sidewalk in front of his property. While not required to repair general defects, yet when he cut a hole in the sidewalk, the court said, the duty devolved on him properly to construct the opening and thereafter to use reasonable care to keep it in

repair as long as he remained in possession. "The duty sprang from the necessity of having safe sidewalks, and, as the necessity is continuous, so is the duty. Upon no other ground can the construction of a grate in a sidewalk, which is an interference with the public highway, be justified, even when permission is duly granted". Upon transfer of the entire interest and possession, as the duty runs with the land, the same duty and liability would devolve upon the grantee, whether in fee or for a term. So a lease of the entire premises and possession thereof by the tenant would doubtless throw the burden upon the latter. But, even though the tenant agrees to keep the premises in repair, the owner remains liable for injuries resulting from a defective or unsafe condition existing at the date of the demise. *Wells* v. *Ballou*, 201 Mass. 244; *Hill* v. *Hayes*, 199 Mass. 411; *Matthews* v. *DeGroff*, 43 N. Y. S. 237; *Calder* v. *Smalley, supra*.

From these and other authorities, we find the general rule to be that, although the owner is authorized to maintain an opening in the sidewalk, he is liable to the exercise of reasonable care and diligence in making and keeping the same in a safe condition. *McGaffigan* v. *Boston*, 149 Mass. 289; *Leahan* v. *Cochran*, 178 Mass. 566; *Hill* v. *Hayes*, 199 Mass. 411; *Wells* v. *Ballou, supra; Irvin* v. *Wood, supra; Trustees* v. *Foster, supra; Denver* v. *Dean*, 10 Col. 375; *Drake* v. *Kansas City*, 190 Mo. 370; *McLaughlin* v. *Kelley, supra;* 1 Elliott on Roads and Streets § 902; Joyce on Nuisances §§ 231, 232; *Dickson* v. *Hollister*, 123 Pa. 421. Nor is actual knowledge by him of an existing defect in the vault or its covering essential to liability. It is sufficient if by the exercise of reasonable diligence he could have known of the dangerous condition. *Gillis* v. *Light Co.*, 202 Mass. 222; *Calder* v. *Smalley*, 66 Ia. 219; *Anderson* v. *Dickie*, 1 Robt. 238; *Latell* v. *Cunningham*, 142 N. W. (Minn.) 141; *Chicago* v. *Jarvis*, 226 Ill. 614; *Hayes* v. *Seattle*, 43 Wash. 500, 7 L. R. A. N. S. 424. See also *Keating* v. *Boston*, 206 Mass. 327, and valuable note 19 Ann. Cas. 464. As said in *Timlin* v. *Oil Co.*, 126 N. Y. 525, even if the owner did not create the defective condition, yet "if to his knowledge it exist on his premises at the time of the demise, and is of a character dangerous to the public or an adjoining owner, or if he were in truth ignorant

and yet by the exercise of reasonable care and diligence he would have known of its existence, there is no principle which can exempt him from the responsibility any more than if he created the nuisance himself". Whether the grating was defective when the Nortons became owners of the property and at the time of their lease to Helmbright, and whether they negligently permitted the defective and unsafe condition to remain, and, if so, what constituted negligence on their part, were questions solely for the jury. *McGaffigan v. Boston, supra; Wells v. Ballou, supra; Hill v. Hayes, supra; Gillis v. Light Co., supra; Anderson v. Dickie, supra; Reinhard v. Mayor*, 2 Daly 243; *Sterling v. Thomas*, 60 Ill. 264; *Chicago v. Jarvis*, 226 Ill. 614; *Dickson v. Hollister, supra; Calder v. Smalley*, 66 Ia. 219; *Hayes v. Seattle, supra; Matthews v. City*, 80 N. Y. S. 360; *Latell v. Cunningham, supra.* In *Calder v. Smalley*, the court said: "It was shown that the covering of the coal hole was without fastenings, and subject to be removed by any person. The jury, we think, could well have found that it was negligent to leave the covering in that condition; that the care required by the law, for the safety of those who frequented the street, demanded that such a trap should not be arranged for them in the sidewalk, which could be readily set by the mischievous and malicious, and would be set by the negligent, who would fail properly to replace the cover after using it".

Nor can defendants exonerate themselves from liability, on the ground that at the time of their purchase a tenant of their grantors was and remained in possession of part of the premises. If, when they purchased, the property had been vacant and subsequently leased by the Nortons, there could be no question of their duty to repair and fasten the grate if then dangerous; and if thereafter they leased to Helmbright, whether with or without a covenant on his part to repair, the defective condition continuing, they would still remain liable for any injury occasioned thereby. The owners then clearly had the right to enter and observe the condition of the premises, including the opening in the pavement, and make necessary repairs. And it was their duty to enter for this purpose—a duty devolving upon them in order to prevent injury to pedestrians on the highway. Any failure on

their part in the performance of that duty would render them liable to the person injured. The mere fact that part of the premises were occuppied by Helmbright would not operate as an excuse. They had the same right and authority at the termination of the lease under which he first entered. And if when they again leased to him they knew, or by the exercise of reasonable diligence could have known, the grating was defective, and did not repair it, we are unable to perceive any difference in their duty or liability; both remained the same.

As was said in *Lusk* v. *Peck*, 132 N. Y. App. Div. 426: "Although the defect in the structure developed during the period covered by the lease, if the owner thereafter made another lease to the same parties without inspecting the structure, he is liable, as at the expiration of the first lease he had a right to enter and make an examination. \* \* If he leases the premises, knowing the public use is to continue, he must at least be reasonably assured they have not deteriorated, and are still safe for occupancy by the public. This obligation requires affirmative action on his part; and, in order that he may be exculpated to one injured by reason of the decay of the place he vouched for, it must appear he inspected the property or in some other adequate manner fulfilled his obligation to the public before leasing the same. Any other rule might relieve a responsible owner from the duty he owes to the public, and shift the burden to an irresponsible tenant." See also *Matthews* v. *DeGroff*, 43 N. Y. S. 237; *Whalen* v. *Gloucester, supra; Mancuso* v. *Kansas City, supra. Fleischner* v. *Investment Co.*, 25 Ore. 119, holds that "a landlord who renews a lease after the creation of a nuisance upon the premises thereby becomes chargeable for its continuance. \* \* Upon the surrender of the old lease, the company was invested with the right of entry, and, as the nuisance was in existence upon the premises, it must be presumed to have been aware of the fact, and hence it is liable for its continuance under the exception to the general rule that it had demised premises with a nuisance then in existence thereon. The law is well settled that if the tenant creates a nuisance upon the premises during the term, by an unusual or extraordinary use thereof, although the landlord can not be made

chargeable for the consequences in the first instance, yet, if he subsequently renews the lease with the nuisance thereon, he becomes chargeable for its continuance''. *Sanford* v. *Clarke,* L. R. 21 Q. B. Div. 398, holds that, even on a weekly tenancy, the landlord could enter and make repairs at the end of any week; and that, failing to do so, he is liable for any injury resulting from the defective condition of a coal plate in the pavement, as his duty requires the exercise of ordinary care in anticipation of defects which are the legitimate result of use and climatic influences.

Of the admission and rejection of certain · evidence, oral and documentary, defendants complain. But, as no part of what was thus admitted or rejected became a part of the record by special bills of exception or as grounds of the motion for a new trial, we decline, under the authority of *Gregory* v. *Railroad Co.,* 37 W. Va. 606, *Halstead* v. *Horton,* 38 W. Va. 727, *State* v. *Henaghan,* 81 S. E. 539, and other cases decided at· the present term, to devote the time necessary to search the voluminous record in order to discover the various rulings complained of by them.

It is apparent, without further discussion, that plaintiff's instruction C was eminently proper. It advised the jury that, if. defendants maintained a coal hole in the sidewalk in front of their premises, it was their duty to equip and maintain it ''in a reasonably safe and proper condition, so as to be reasonably safe to the persons walking upon and along said sidewalk, and for any injury arising from their failure so to do they are liable.'' Instruction D seems immune from the criticism to which defendants attempt to subject it. More than once it has been approved by this court in identical or similar terms. *Riley* v. *Railway Co.,* 27 W. Va. 151, 161; *Carrico* v. *Railway Co.,* 39 W. Va. 102. The limitation as to the amount of damages ascertainable did not vitiate the instruction. It simply informed the jury not to exceed the sum claimed by the declaration. That it did not mislead appears from the amount found by the verdict.

Further complaint is made by defendants of the refusal by the court to give their instructions from 8 to 16 inclusive. The last seven were very properly rejected; because in conflict with the authorities we have cited, or misleading, or with-

out evidence in their support. We further think instruction 8 was wrong; for it told the jury "there is no rule of law necessarily requiring the defendants to fasten the lid of the coal hole with a rod or chain". The ordinance in evidence specifically requires the cover to be fastened in the manner stated in the instruction. But, even in the absence of such ordinance, the owner, as we have seen, was required by law to secure the covering in some manner to make the grating reasonably safe for pedestrians on the highway. The instruction was in direct contravention of the rule thus announced. It was also misleading; because, if given, the jury might have inferred that no duty devolved upon the owners to fasten the grating in any manner, or to keep it in a reasonably safe condition of repair. Instruction number 9, asked by defendants, if given, would have informed the jury they could not find for plaintiff unless they believed there was a *distinct* preponderance of the evidence in her favor. As defined by lexicographers, "distinct" means "clear to the senses or mind", "easily perceived or understood", "plain", "unmistakable". But it is not essential that the evidence on behalf of a party on whom rests the burden of proof must unmistakably preponderate in his favor in order to entitle him to a verdict, or that for this purpose the preponderance must be clear to the mind or senses, or easily understood or perceived. Evidence which when considered in its entirety satisfies the minds of the jury of the truth of the facts in issue is sufficient to show a preponderance in favor of such party; and to have this effect the preponderance need not be perfectly clear. "In such case an honest belief, a belief which results from a careful, diligent investigation of the proof, is all that is to be expected". *Simmons* v. *Insurance Co.*, 8 W. Va. 474.

Defendants likewise urge reversal because, as they insist, the verdict is excessive and contrary to the evidence. The case was twice tried, each time resulting in a finding for plaintiff. Although the second verdict was much larger than the first, we can not say it was so excessive as to warrant interference by this court. Plaintiff was seriously injured. While before the accident she could and did perform, unaided, all her household duties and obligations; since that time,

the proof tends to show, she was unable to perform such duties, became feeble, nervous and excitable, and required the constant assistance of a servant or employee. Many witnesses were examined by both parties, among whom were physicians and surgeons of eminent ability, at least two of whom made a physical examination and treated plaintiff for the injuries received by her, while others testified as experts. The jury and the trial judge saw the witnesses, including the plaintiff, and heard their testimony, which, as stated, was voluminous and conflicting.

Finding no error, we affirm the judgment.

*Affirmed.*