Virginia Warren **DALY**, Plaintiff,

v.

James C. **TOOMEY** and John J. Toomey, Trustees, Sinclair Refining Company,

and

William T. **Muldrow**, Defendants.

Civ. A. No. 1876–59.

United States District Court
District of Columbia,
Civil Division.

Jan. 10, 1963.

476

John L. Laskey, Washington, D. C., for plaintiff.

Harry L. Ryan, Jr., Washington, D. C., for defendants Toomey.

John P. Arness, Washington, D. C., for defendant Sinclair Refining Co.

H. Mason Welch, Washington, D. C., for defendant William T. Muldrow.

PINE, District Judge.

Defendants, hereinafter referred to as the Toomeys, Sinclair and Muldrow, have filed a joint motion to enter judgments in their favor under Rule 50(b) Fed.R. Civ.P., or in the alternative for a new trial.

Their Memorandum of Points and Authorities attached thereto does not discuss two contentions vigorously asserted at the trial. However, their motion does state that the Court erred "in refusing to grant the motions of defendants for directed verdicts at the close of plaintiff's case," and that "the verdicts of the jury are contrary to law." This general language is sufficiently sweeping to cover the contentions which were urged at the trial, but which oddly are omitted from their present Memorandum. I cannot assume that they have been abandoned in view of this general language, and therefore shall state my position in respect of them.

Before the incident giving rise to this suit, plaintiff and her escort had

attended a night baseball game. At the conclusion of the game they left the stadium where it was held, and proceeded toward a lot where plaintiff's escort had parked his automobile. Their route took them along a city street until they reached a public alley. At this point they turned from the sidewalk of this street into the alley. Automobiles were being driven out of the alley from parking lots adjacent thereto. Pedestrians were walking into and in the alley in the direction of these lots. To avoid oncoming automobiles, plaintiff and her escort walked to their left in single file with plaintiff in the lead. They walked a short distance in the same direction when plaintiff, according to her testimony, again stepped to her left to avoid an automobile parked in their path. Thereafter, she took several steps forward, fell into a stairwell from the side thereof and was injured. The stairwell led from the alley to the basement of a building. The basement was used for storage purposes and above it was a building used in part as the office portion of a gasoline station selling Sinclair products. This station, including the open and enclosed portion thereof, traversed the alley from the sidewalk of the street where plaintiff had turned into the alley to a point beyond where she fell. The gasoline station property and the alley were immediately adjacent to each other. The side of the building did not extend to the alley but was several feet back of it, thereby giving room for the stairwell. It was not covered, had no warning signs on it, and no guard rail above and at its side. There was evidence that there were two flood lights on a building across the alley, and evidence that it was dark, or very dark, where she fell. If the latter be the fact, no flood lights existed, or if they did, they were inadequate, or were unlighted.. There was a raised coping extending several inches above the level of the ground: at the side of the stairwell, but this was. broken away in part. The stairwell had existed in the same condition for many years and long prior to the leaseholds. hereinafter referred to. There was no, line or sign marking the boundary between the alley and the gasoline station property, and at the time plaintiff fell she was on the property of defendants. Technically, therefore, she was a trespasser or a bare licensee, who, as a general rule, is required to take the premises. as he finds them, and, if injured, can recover only for intentional, wanton or willful injury or a hidden danger.[1] None of these conditions existed, and it was urged at the trial that defendants were entitled to a directed verdict as a matter of law on this account.

But this rule of law on which reliance was placed, is a general rule, and subject to an exception, namely, that where property is adjacent to a public highway, and the occupant of the property maintains a dangerous condition, such as an excavation thereon, and also maintains a situation or condition where a reasonably prudent person might mistake the point where the highway ends and the private property begins, the occupant has a duty to take reasonable precautions to protect persons against falling into the excavation. In other words, if the occupant might reasonably have anticipated that a reasonably prudent pedestrian, owing to the appearance of the place, might stray away from the highway in the belief that he was still on it, and fall into the excavation, the occupant must take reasonable precautions to protect him against such a contingency.[2]

1. Firfer v. United States, 93 U.S.App.D.C. 216, 208 F.2d 524; Smith v. John B. Kelly, Inc., 107 U.S.App.D.C. 140, 275 F. 2d 169.

2. Concho Const. Co. v. Oklahoma Natural Gas Co., 201 F.2d 673 (10th Cir.); Louisville & N. R. Co. v. Anderson, 39 F.2d 403, 405 (5th Cir.); Crogan v. Schicle, 53 Conn. 186, 1 A. 899, 5 A. 673; Tomle v. Hampton, 129 Ill. 379, 21 N.E. 800; Rachmel v. Clark, 205 Pa. 314, 54 A. 1027, 62 L.R.A. 959; Bryan v. Hines, 245 App. Div. 322, 281 N.Y.S. 420; Beck v. Carter, 68 N.Y. 283 (1877); Restatement of the Law of Torts, 1934, sec. 367; Prosser on Torts (2d Ed.) 428 et seq.

■ There was evidence sufficient to support a verdict on this basis, which was relied on by plaintiff, and a motion for a judgment n. o. v. accordingly is not well taken in this respect.

The defendants, however, claimed at the trial that a directed verdict should have been granted on another ground. This was based on their legal status and contractual relations, which I shall now discuss.

The owners of the property in question were the defendants Toomey. They were trustees of the estate of Ellen C. Toomey, who acquired the property at the turn of the century, and title had been vested in her and her trustees continuously since then. In the early thirties, the owners remodeled the property, the original building of which had been used as a Civil War prison, and converted it into a gasoline station, with the usual appurtenances of pumps, etc., and remodeled the old building into an office for the gasoline station and for other purposes. The Toomeys first leased the property to Sinclair in 1949 and again in 1956. Defendant Sinclair subleased it to others, who operated it as a Sinclair gasoline station. The lease from the Toomeys to Sinclair entered into in 1956 required the Toomeys to make substantial repairs within four months after its effective date, but none in connection with safeguarding the condition made the basis of the suit. Under the 1956 lease Sinclair first subleased the property to a party not here involved, and subsequently in 1957, subleased it to defendant Muldrow, the occupant at the time of the accident.

The status of the parties therefore is as follows: Defendants Toomey are the owners and original leasors; defendant Sinclair is lessee from the Toomeys and lessor to defendant Muldrow; and defendant Muldrow is lessee from Sinclair.

■■ Taking up the respective positions of the parties seriatim, I shall first direct my attention to the defense of the Toomeys, namely, that as lessors, they owed no duty to keep the premises in a safe condition. The law in this jurisdiction is that, absent any statutory or contractual duty, a lessor is not responsible for an injury resulting from a defect which developed during the term of the lease.[3] No statute has been brought to my attention dealing with the question here involved. So far as the contractual relations between the Toomeys and Sinclair are concerned, the lease from the Toomeys to Sinclair provided that the Toomeys would maintain in good condition the roof, walls, foundations and underground sewer and water lines, not involved herein; that all other repairs of any nature were to be made and paid for by Sinclair, but that Sinclair would make no structural changes without consent of the Toomeys. In my opinion, the insignificant safeguard necessary to make the stairwell safe, such as a rail, sign, or adequate lighting, the existence of which last-named was in dispute, as above stated, would not fall within the clause prohibiting the making of structural changes without the consent of the Toomeys. But assuming that it does, Sinclair was under obligation to make the changes on condition that the Toomeys gave their written consent. No request for such consent was made by Sinclair, and it is difficult for me to follow the argument that they were under no duty in this respect because of lack of consent, which was never requested. To me it is untenable that a lessee who has the duty to make repairs conditioned on consent can escape responsibility by the simple expedient of not requesting consent. There being no statute, and under the foregoing construction of the lease, no contractual obligation on the part of the Toomeys to make repairs, they would be absolved from liability under the general law above referred to, except for the fact that the defect or condition here involved did *not* develop during the term of the lease,[3] but was in existence at the time of its commence-

---

3. Bowles v. Mahoney, 91 U.S.App.D.C. 155, 202 F.2d 320, and cases cited therein (1952), cert. den., 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719.

ment and long prior thereto. Under such circumstances, the law immunizing landlords from responsibility for injuries resulting from defects has no application, but, on the contrary, when the condition or defect complained of is, as here, in the nature of a public nuisance, existed, was obvious, and was known to the landlord at the time of the entry into the lease, the landlord, as well as the tenant, are responsible for injuries to third persons resulting from the maintenance of such condition.[4]

■■ Defendant Sinclair contended, contrary to my view hereinabove expressed, that the contractual burden was on the Toomeys to make the necessary changes to provide safeguards because of the consent requirement in the lease. Assuming, *arguendo*, that it was, Sinclair does not thereby improve its position, because, as a landlord, it had the same duty as the Toomeys, and, like them, is not immunized from liability for damages growing out of the maintenance of this condition existing at the time of its lease to Muldrow.[4] Sinclair further contended that it was only an intermediary lessor or conduit between the Toomeys and Muldrow, and that this fact in some occult way relieved it of liability. No authority has been submitted to me in support of this proposition, but such case law as I find seems to the contrary.[5]

■ Defendant Muldrow argued, as I recall,[6] that it is not responsible by reason of the provisions of the lease between himself and Sinclair. That lease provides that Muldrow should make no alterations, changes or additions without first procuring the written consent of Sinclair; that all work done by him shall be at his sole cost, and that alterations,

changes or additions so made by him shall become the property of Sinclair. What I have said in respect of the lease between the Toomeys and Sinclair in respect of consent, applies equally to Sinclair and Muldrow, because no written consent was requested by Muldrow to make any alteration, change or addition to protect the public against the excavation, and it would strain my credulity, to say the least, to believe that if such a request had been made, it would have been refused. In addition, Muldrow, as the occupant of the premises, had the inescapable duty to safeguard the public against the injury here involved.[7]

My view, therefore, is that the effort on the part of each defendant to throw the onus of blame on another cannot be sustained, and that each of the defendants is responsible for the maintenance of this public nuisance known to each and existing throughout, and long before, the term of the respective lease herein involved. Accordingly, I hold that each is answerable, equally with the others, for damages to a third person who was injured thereby.

The motion for judgment n. o. v. so far as it relates to this second ground is therefore denied as to each defendant.

■ With respect to the claim that judgment n. o. v. should be granted on the ground that plaintiff was guilty of contributory negligence as a matter of law, I must construe the evidence most favorably to plaintiff and give her the benefit of every reasonable inference arising therefrom, and then before the motion can be granted, I must conclude that all reasonable men must reach the conclusion that she was contributorially

---

4. Cool v. Rohrbach, Mo.App., 21 S.W.2d 919, 921 (1929); Updegraff v. City of Ottumwa, 210 Iowa 382, 226 N.W. 928, 929, 930 (1929); Simms v. Kennedy, 74 Fla. 411, 76 So. 739, 740, L.R.A. 1918C, 297 (1917); Hill v. Norton, 74 W.Va. 428, 82 S.E. 363, 365 (1914); Childress v. Lawrence, 220 N.C. 195, 16 S.E.2d 842 (1941); Fraser v. Kruger, 298 F. 693, 697 (8th Cir. 1924); Crogan

v. Schiele, supra; Tomle v. Hampton, supra, 32 Am.Jur. Landlord & Tenant sec. 757.

5. Timlin v. Standard Oil Co. of N. Y., 126 N.Y. 514, 27 N.E. 786, 788.

6. Except for small portions, no transcript of the trial has been prepared.

7. See cases collected under footnotes 2 and 4.

negligent.[8] To be sure, plaintiff answered "yes" when she was asked whether it was a fact that when she reached a point where she could not see where she was walking, she kept right on walking, without paying any attention to her safety, until she fell in a hole. But at that moment she reasonably could have believed that she was walking in the public alley, and I cannot say that all reasonable men would reach the conclusion that an ordinarily prudent pedestrian, so circumstanced, would stop and investigate when he reached a point where he could not see, particularly when automobiles and pedestrians were passing along the route ahead of him without encountering any difficulty. It comes down to this: Some persons on a public highway would stop when they cannot see what is ahead of them, but I cannot find that all reasonable men would conclude that an ordinarily prudent person would do so, when before him are pedestrians and automobiles passing along the general route without difficulty.[9]

I, therefore, deny the motion for judgment n. o. v. on this ground.

So far as the motion for new trial is concerned, one of the points concerns the action of the Court when it became apparent that the jury was about to announce a verdict contrary to its instructions, and another concerns the propriety of giving the so-called "Allen Charge."

These questions arose in the following context:

The case was submitted to the jury at 3:47 p. m. At 6:04 p. m. the jury was brought to the court room and the Court stated to the jury that it was then shortly after 6 o'clock, that they had been deliberating a little over 2½ hours, and that the Court did not wish unduly to interfere with their plans for the evening and therefore would allow them to separate and return the following morning and resume their deliberations. At this point the Court repeated his admonition against discussing the case with anyone or allowing anyone to discuss it with them, and against discussing it amongst themselves until they were again in the jury room the following morning. The Court further stated that the parties were entitled to their judgment uninfluenced by any outside source, and that if there was anything in the newspapers about the case or on the radio or television, they should ignore it.

The jury resumed its deliberations the following morning, and at 4:50 p. m., they were brought into the courtroom, and the Court stated that he had not heard from them and assumed that they had not agreed upon a verdict. He thereupon stated that at this stage of the case he thought he should give them one additional instruction, and then gave them the "Allen Charge." The jury thereupon retired to the jury room. At 5:10 p. m. that day the jury returned and the foreman announced that the jury had agreed upon a verdict. He was asked by the clerk as follows: In the claim of Virginia Warren Daly against defendants Toomey, do you find for the plaintiff or the defendants. The foreman answered, defendants. He was then asked by the clerk: In the claim of Virginia Warren Daly against defendant Sinclair Refining Co., do you find for the plaintiff or the defendant, and the foreman answered, plaintiff. He was then asked by the clerk: In the claim of Virginia Warren Daly against the defendant Muldrow, do you find for the plaintiff or for the defendant, and the foreman answered, defendant. At this point the Court interjected, stating that apparently the jury misunderstood one of his instructions, and directed the jury to retire to the jury room while the Court discussed the question with counsel. After hearing coun-

8. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Jackson v. Capital Transit Co., 69 App.D.C. 147, 99 F.2d 380; Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142.

9. The following cases in this jurisdiction support this view: Dashields v. W. B. Moses & Sons, 35 App.D.C. 583, 31 L.R.A., N.S., 380, and Peigh v. Baltimore & O. R. R. Co., 92 U.S.App.D.C. 198, 204 F.2d 391, 44 A.L.R.2d 671.

sel, the Court stated that the purported verdict was inconsistent with his instructions and that he would have to instruct the jury further. Thereupon the jury was brought into the courtroom and the Court stated that the jury apparently misunderstood one of his instructions on the law, when they found against the Sinclair Refining Co. and for the Toomeys and for Muldrow, and then proceeded to instruct them further. The instruction given at this time was in accord with the instruction previously given in his general charge to the jury, and, briefly stated, they were told that if their verdict was based on the exception to the general rule in respect of trespassers or bare licensees, their verdict should be against all three defendants, but that if their verdict was only against the one who failed to turn on the lighting fixtures, if one did fail to turn them on, then in that case only could it be against Muldrow individually. Whereupon the jury retired to their jury room, were taken to dinner shortly after 6 p. m., resumed their deliberations after dinner and were returned to the court room at 11:05 p. m. At this point the Court addressed the foreman, stating that the jury had had this case under consideration since the preceding afternoon, and had been deliberating, as the Court computed it, over 12 hours, that he had heard nothing from them and assumed they had not reached a verdict. The foreman replied that they had not. Whereupon the Court asked whether, if given more time, he thought they could reach a unanimous verdict. The foreman announced in the affirmative and stated that he thought they would be able to reach a verdict if given a little more time. Thereupon the Court stated that he did not want to appear to be coercive, and, it being shortly after 11 p. m., he would allow them to go to their homes and come back the following morning to resume their deliberations. The jury were again admonished as previously. They resumed deliberations the following morning, and at 12:30 o'clock p. m., they returned to the court room and rendered their verdict for plaintiff against each of the defendants in the amount of $17,000.00.

 Defendants contend that the Court erred in preventing the jury from announcing a completed verdict when it became apparent that it would not be consistent with the Court's instructions, and in thereafter sending them back to their jury room for further deliberation after instructing them further. The authorities do not support defendants' contention, but seem adequately to uphold the correctness of the Court's action. A general statement of the law in this regard is contained in 53 Am.Jur. Trial, sec. 1099, and is so completely in point that I quote it in part as follows:

"The principle is general that when a jury return an informal, insensible, or a repugnant verdict, or one that is not responsive to the issues submitted or is in disregard of the instructions of the court, they may be directed by the court to reconsider it and bring in a proper verdict. [citing cases] * * * This may be done with or without the consent of counsel, and should be done whether requested or not. [citing cases] * * * The practice is really only an application of the settled rule that until the verdict has been recorded, or the jury have been discharged as unable to agree, their connection with the case has not come to an end."

This is consonant with the view of this Court in Market Co. v. Clagett, 19 App. D.C. 12, 28. Cf. Small v. Pennsylvania R. R. Co., 65 App.D.C. 112, 80 F.2d 704.

It would therefore appear that the Court acted well within its province in pursuing the course it did. If it had permitted the jury to complete its verdict, it would have been necessary to set it aside, as contrary to law, and grant a new trial. If the Court had discharged the jury then, as one of counsel for defendants suggested, a second trial likewise would have been required. I cannot believe the law envisages any such duplica-

tion of effort and expense under the circumstances here involved.

 So far as the complaint against giving the "Allen Charge" is concerned, no authority is cited by defendants to support their claim that it was erroneously given, and I see nothing improper or coercive about it under the facts above set forth.

The contention is also made in the joint "Points and Authorities" that certain evidence was improperly excluded. This evidence was to the effect that, after the accident, the Toomeys erected a railing around the stairwell. In my opinion this was inadmissible under the general rule excluding such evidence.[10] Neither did it fall within the exceptions referred to in Fine v. Giant Food Stores, Inc., D.C., 163 F.Supp. 231, inasmuch as ownership and control and contractual obligations included in the exceptions and relied on by defendants are not dispositive of liability to plaintiff, as hereinabove discussed. Its relevancy could only arise in connection with a decision on the respective cross claims for indemnity and contribution, but these were reserved for decision by the Court by stipulation of counsel and were not before the jury.

The tender of this evidence was understandably objected to by counsel for defendants Toomey, and I sustained his objection. Nevertheless, the same counsel now claims that it was error to exclude it.

I feel that the verdict was excessive, but nothing in the case shows that it was induced by passion or prejudice or was of a "monstrous" variety. In the exercise of my discretion, however, I believe that the judgment is one which warrants a remittitur. Accordingly, if plaintiff, within ten days from the date of my order herein, shall file a remittitur of that part of the verdict and judgment in her favor in excess of $12,000.00, the motion

for a new trial will be denied as of the date of filing the remittitur; otherwise, the motion for a new trial will be granted.

Order in accordance herewith will be entered.

---

10. Altemus v. Talmadge, 61 App.D.C. 148, 152, 58 F.2d 874; Avery v. S. Kann Sons Co., 67 App.D.C. 217, 218, 91 F.2d 248.